

FILED

JUL 1 6 2007

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

MARAUG, INC.,           :
                        :
        Plaintiff,      :
                        :    Civil Action No. 4:06cv73
v.                      :
                        :
ALDO BERTUGLIA, et al., :
                        :
        Defendants.     :
                        :

## OPINION AND FINAL ORDER

> *A bottle of white, a bottle of red*
> *Perhaps a bottle of rose instead*
> *We'll get a table near the street*
> *In our old familiar place*
> *You and I - face to face*
>
> *A bottle of red, a bottle of white*
> *It all depends on your appetite*
> *I'll meet you any time you want*
> *In our Italian restaurant.*

> -Billy Joel, <u>Scenes From An Italian Restaurant</u> (1977)

For many diners in the Williamsburg, Virginia area, Doraldo
Ristorante Italiano ("Doraldo's") is the old, familiar place
about which Billy Joel sings.  The restaurant's excellent
reputation attracts customers from substantial distances.  The
current owner of Doraldo's - plaintiff Maraug, Inc. - believes
the restaurant's name to be so valuable that it caused the United
States Patent and Trademark Office ("USPTO") to issue a service

mark registration protecting it.

Maraug brought this infringement action against Doraldo's
founder, defendant Aldo Bertuglia, and three of his corporations
that own new restaurants.  Maraug objects to Mr. Bertuglia
advertising his new restaurants with the tag line "former owner
of Doraldo's in Williamsburg."  Mr. Bertuglia has counterclaimed,
alleging that Maraug defrauded the USPTO by registering a mark
that was already in use and that it did not own.

Based on the evidence introduced by the parties at a bench
trial and the application of relevant law, the Court **FINDS** in
favor of defendants on the infringement claim because Maraug did
not prove that the advertisements in question are likely to cause
customer confusion.  The Court further **FINDS** in favor of Maraug
on the counterclaim because Mr. Bertuglia did not prove, by clear
and convincing evidence, that Maraug subjectively intended to
deceive the USPTO when it registered the disputed mark.

## I.   Findings of Fact

Defendant Aldo Bertuglia is a career restaurateur who has
owned and operated a number of dining establishments, first in
the New York City area and later in the region surrounding
Williamsburg, Virginia.  While in the New York City area, Mr.
Bertuglia combined his wife's name, Dora, with his first name,
Aldo, to create a restaurant named "Doraldo's."

2

After moving to Williamsburg, Mr. Bertuglia formed a
Virginia corporation, Doraldo Restaurant, Inc., with a partner
named Cologio "Charlie" Messina.  The corporation owned and
operated Doraldo Ristorante Italiano, commonly known as
Doraldo's, beginning in 1997.

In 2001, Francesco "Frankie" Alosa, through his company
Maraug, bought the Williamsburg Doraldo Ristorante Italiano from
Mr. Bertuglia's corporation.  The sale was documented by an Asset
Purchase Agreement ("APA") (Def.'s Ex. 3).  The only documented
reference to the trade name "Doraldo's" appears in the Schedule
of Assets conveyed (i.e., Attachment A).  The first entry on that
list states:

> The use of the tradename, Doraldo's, to be used
> exclusively at 1915 Pocahontas Trail, D-2, Williamsburg,
> Virginia, including the right to use the telephone
> number, and the right to use any yellow page advertising
> that is in place along with any other such advertising.

(Def.'s Ex. 3.)  Following the sale, Doraldo Restaurant Inc.
ceased doing business and filed Articles of Dissolution with the
Virginia State Corporation Commission.

Maraug has owned and operated Doraldo Ristorante Italiano
continually since purchasing it in 2001.  Three years after the
acquisition, Maraug filed an application with the USPTO to
register the service mark DORALDO.  As part of that application,
Maraug filed a sworn affidavit pursuant to 15 U.S.C. § 1051(a)(3)
averring that: 1) Maraug "believes" that it is the owner of the

3

mark being registered; and 2) that "to the best of [Maraug's] knowledge and belief, no other person has the right to use such mark in commerce." Id. § 1051(a)(3)(A), (a)(3)(D).  Alosa and counsel for Maraug prepared the application and affidavit.  On July 19, 2004, the USPTO allowed the mark DORALDO for publication and registration and issued it on the USPTO's Principal Register with Registration No. 2,970,717.  At some point after the USPTO issued the registration for the mark, Charlie Messina, Mr. Bertuglia's old business partner, became a partner in Maraug. Maraug has since opened a second Doraldo's restaurant in Kilmarnock, Virginia.

In the years since selling Doraldo Ristorante Italiano, Mr. Bertuglia organized several different Virginia companies, including defendants Doraldo's Inc., Foxhunter Grill, Inc., and Pelican Cove LLC.  Through these companies, Mr. Bertuglia owns and operates three restaurants: Tuscany Ristorante Italiano, Foxhunter Grill, and Pelican Cove.  Mr. Bertuglia's new restaurants are in the same general geographic area as Maraug's two Doraldo's locations, and some of Mr. Bertuglia's restaurants serve dishes similar, if not identical, to the dishes served in Maraug's restaurants.  Mr. Bertuglia advertises his restaurants in various local papers and tourism magazines.  Many of these advertisements contain some variation of the phrases "former owner of Doraldo's in Williamsburg" or "original owner of

4

Doraldo."

## II.  **Analysis and Conclusions of Law**

### A.  **Trademark Infringement**

To prove trademark infringement under the Lanham Act, a plaintiff must prove that: 1) it owns the trademark; 2) the defendant used the trademark; 3) the use occurred in commerce; 4) the defendant used the trademark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and 5) the defendant used the trademark in a manner likely to confuse customers.  15 U.S.C. § 1114; Lamparello v. Falwell, 420 F.3d 309, 313 (4th Cir. 2005).  Maraug's trademark infringement claim fails on the last element of this test, i.e., likelihood of customer confusion.[1]

The registered owner of a mark may prevent another's use of the mark only if that use is "likely to cause confusion, or cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a).  The standard of inquiry is whether the alleged infringing use is "likely to confuse the ordinary consumer as to the source or sponsorship of the goods."  Anheuser-Busch, Inc. v. L&L Wings, Inc., 962 F.2d 316, 318 (4th Cir. 1992).  Courts deciding whether there is a likelihood of confusion among the competing uses of the mark must

---

[1]The first element, ownership of the mark, is discussed infra, Part II.B.

5

consider seven factors: (1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual confusion. <u>Lone Star Steakhouse & Saloon v. Alpha of Va., Inc.</u>, 43 F.3d 922, 933 (4th Cir. 1995); <u>Pizzeria Uno Corp. v. Temple</u>, 747 F.2d 1522, 1527 (4th Cir. 1984). Each factor is of varying strength and relevance depending upon the case. <u>Lone Star</u>, 43 F.3d at 933.

In less legalistic terms, Maraug must prove that the contested advertisements are likely to cause customers to patronize one of Mr. Bertuglia's restaurants (a) thinking that they are going to Doraldo Ristorante Italiano, or (b) thinking that the Maraug and Bertuglia restaurants are affiliated. A coined mark, such as DORALDO, is presumed inherently strong. <u>See, e.g.</u>, <u>Kos Pharms. Inc. v. Andrx Corp.</u>, 369 F.3d 700, 713 (3d Cir. 2004) (discussing the weight of coined and fanciful marks); 2 <u>McCarthy on Trademarks and Unfair Competition</u> §§ 11:5, 11:8 (4th ed.) (defining "coined mark" and its relative strength as a mark). Moreover, the litigants offer similar goods and services in similar facilities. On the other hand, there was no

admissible evidence of actual confusion.[2]  Maraug instead asserts
that the phrases "former owner of Doraldo's" or "original owner
of Doraldo's" are inherently confusing.

The Court is not persuaded that the accused phrases are
inherently likely to cause confusion as to the source of the
goods or services.  The advertisements clearly distinguish
between Mr. Bertuglia's restaurants and Doraldo's.  The use of
the words "former" and "original" imply, in this unique
situation, that there is no current affiliation and that the
goods or services are distinct.  In addition, the evidence
suggested that Mr. Bertuglia did not use the accused phrases for
the purpose of luring customers into his restaurants under false
pretenses.  Rather, Mr. Bertuglia intended to convey that if a
customer liked Doraldo Ristorante Italiano in the past, that
customer may also like his new restaurants.  The prefatory words
"former" and "original" effectively serve as disclaimers that
guard against customer confusion, rather than ruses to create
confusion.  Cf. Sunsport, Inc. v. Barclay Leisure Ltd., 984 F.
Supp. 418, 421-22 (E.D. Va. 1997) (discussing use of disclaimers
to avoid confusion); Yankelovich, Skelly & White, Inc. v. White,
Yankelovich, Skelly Consulting Group, Inc., 1989 U.S. Dist. LEXIS

---

[2]The only testimony close to showing actual confusion was
inadmissible hearsay from Mr. Alosa that customers had told him
that they thought Doraldo's was affiliated with Mr. Bertuglia's
restaurants.

7

11468, at *15 (S.D. N.Y. Sept. 27, 1989) (same).[3]  The Court

therefore **FINDS** that Maraug did not meet its burden of proving

likelihood of confusion and **DISMISSES** the trademark infringement

claim.


B.  <u>**Cancellation of the Trademark Due to Fraud**</u>

    As noted above, Mr. Bertuglia has petitioned via

counterclaim for cancellation or amendment of the DORALDO

trademark pursuant to 15 U.S.C. § 1064.  To prevail on such a

petition, Mr. Bertuglia must prove by clear and convincing

evidence that Maraug "knowingly made false, material

misrepresentations of fact and intended to deceive the" USPTO in

Maraug's application.  <u>Resorts of Pinehurst, Inc. v. Pinehurst</u>

<u>Nat'l Corp.</u>, 148 F.3d 417, 420 (4th Cir. 1998) (citations

omitted).  As part of the registration process, a trademark

---

[3]A party may make nominative use of another's mark to
identify himself or his past activities.  Nominative use is the
practice of referring to another's mark to help describe one's
own product or service.  <u>Century 21 Real Estate Corp. v.</u>
<u>Lendingtree, Inc.</u>, 425 F.3d 211, 218 (3d Cir. 2005).  For
example, "Michael Jordan would not [infringe or] dilute the name
'Chicago Bulls' by referring to himself as a former member of
that team."  <u>Playboy Enters., Inc. v. Welles</u>, 279 F.3d 796, 806
(9th Cir. 2002).
    In the Third Circuit, nominative use is an affirmative
defense to a <u>prima facie</u> case of likelihood of confusion, similar
to the fair use defense.  <u>Century 21</u>, 425 F.3d at 221.  In the
Ninth Circuit, an assertion of nominative use gives rise to a
modified likelihood of confusion analysis.  <u>Playboy</u>, 279 F.3d at
801.  The Court need not choose between the Third Circuit
approach and the Ninth Circuit approach due to Mr. Bertuglia's
use of disclaimers.

registrant must affirm, under oath, that he "believes" himself to be the owner of the mark sought to be registered and that "to the best of his knowledge and belief" no other person has the right to use the mark in commerce.  15 U.S.C. § 1051(a)(3)(A), (A)(3)(D).  "The oath is phrased in terms of a subjective belief, such that it is difficult to prove fraud so long as the affiant or declarant has an honestly held, good faith belief."  Resorts of Pinehurst, 148 F.3d at 420 (emphasis, citations, and internal ellipses omitted).

### 1.  No Other Person Using the Mark in Commerce

Mr. Bertuglia's first claim of fraud arises out of his contention that Maraug knew, or should have known, that another Doraldo Ristorante Italiano existed at the time it averred under oath that no other person had the right to use the mark in commerce.  Mr. Bertuglia bases his allegation on the fact that Maraug's principal owner, Frankie Alosa, was present in the Williamsburg restaurant in 1999 and 2000 while Mr. Bertuglia and Mr. Messina were in the process of opening a second Doraldo's in Newport News, Virginia.[4]  Mr. Bertuglia and Mr. Messina ended up

_____

[4]It is unclear whether Alosa's presence at the restaurant was for purposes of observation and due diligence or whether he was actually working at the restaurant.  There was testimony to support both alternatives.  However, defendants produced no IRS W-2 forms or pay stubs to support the claim that Alosa was actually employed by Bertuglia's company.  In any event, the distinction is immaterial.

9

selling this Doraldo's to Gio-Nikki Enterprises, Inc. in 2000.
The restaurant operated under the name "Doraldo Ristorante
Italiano" pursuant to a license granted in connection with the
sale.  At some point after Maraug applied for the DORALDO service
mark in 2004, the Newport News restaurant changed names and then
closed.

     As a preliminary matter, what Maraug should have known is
irrelevant for purposes of trademark cancellation.  Mr. Bertuglia
must prove that Maraug actually knew that the other restaurant
was legally using the name Doraldo's at the time of registration.
To this end, Mr. Bertuglia introduced evidence that Mr. Alosa was
"around" when the Newport News store was built and then sold,
that he was seen speaking with Gio-Nikki's owners, and that Mr.
Alosa was once seen at the Newport News Doraldo's.

     The first two pieces of testimony are far from conclusive.
Even if true, Mr. Alosa's presence in the same place at the same
time in 2001 as Gio-Nikki's owners does not necessarily mean he
knew that they were operating a restaurant called Doraldo's in
2004.  On the other hand, Mr. Alosa's actual presence at the
Newport News Doraldo's would cast significant doubt on his later
sworn affirmation that no one else was using or had the right to
use the mark in commerce.  However, the testimony placing Mr.
Alosa at the Newport News Doraldo's was lacking in specificity,
and thus inconclusive of whether Maraug actually knew that

10

someone else had a legal right to use the mark.  Finally, because
Mr. Messina did not become a partner in Maraug until after Maraug
registered for the mark, any knowledge he had regarding the
Newport News Doraldo's may not be imputed to Maraug at the time
of registration.

While Maraug probably should have known, and indeed may have
known, of the Newport News Doraldo's when it registered for the
trademark, the Court **FINDS** that Mr. Bertuglia has failed to prove
by clear and convincing evidence, <u>Resorts of Pinehurst</u>, 148 F.3d
at 420, that Maraug actually intended to deceive the USPTO when
it registered for the DORALDO trademark.  Were the applicable
standard a preponderance of the evidence, the Court might have
made a different finding.

### 2.  <u>Exclusive Owner of the Mark</u>

Mr. Bertuglia's second allegation of fraud concerns Maraug's
affirmation that it was the owner of the DORALDO mark.[5]  Mr.
Bertuglia asserts that Maraug was nothing more than a licensee of
the trade name "Doraldo" by virtue of the APA language quoted
above.  If Mr. Bertuglia is correct, and the APA language simply
granted a non-exclusive license, Maraug was not the owner of the

_____

[5]To the extent this latter species of fraudulent procurement
was not specifically pled in the counterclaim, the Court **GRANTS**
Mr. Bertuglia's motion to amend the pleadings to conform to the
evidence.  Fed. R. Civ. P. 15(b).

mark at the time of registration in 2004.[6]  See 3 McCarthy on Trademarks and Unfair Competition § 18:43 (4th ed.) (discussing rights of licensees).

Disputed ownership, standing alone, does not necessarily lead to cancellation of a service mark registration.  The critical question is whether Maraug had a good faith belief at the time of application for registration that it owned the trade name and service mark DORALDO.  Maraug could easily have held such a belief because the assignment language in the APA is arguably ambiguous.  The "to be used exclusively at" phrase could be read as "to be used only at," implying that the seller is creating a location-specific license and reserving to itself the right to use the trade name elsewhere.  This construction is bolstered by the fact that the APA does not expressly convey the goodwill associated with the trade name and service mark DORALDO. See generally 3 McCarthy on Trademarks and Unfair Competition § 18:17 (4th ed.) (discussing assignments in gross).  On the other hand, the operative language could be read as "to be used

_____

[6]Under this interpretation of the APA, upon dissolution of the corporation, ownership of the mark reverted by operation of law to Mr. Bertuglia (and perhaps also Mr. Messina) absent contrary direction in the Articles of Dissolution.  Va. Code Ann. §§ 13.1-742 to -750.  Mr. Bertuglia's non-use of the mark thereafter may operate as an abandonment.  It is also possible, depending upon one's interpretation of the APA, that Mr. Bertuglia is a senior user of the mark and still retains certain common law rights to the mark.  See Marshak v. Treadwell, 240 F.3d 184, 198 (3d Cir. 2001).  None of these issues are before the Court for decision.

exclusively by the buyer at," implying that the buyer has the sole right to use the mark.[7] This construction is bolstered by the fact that Mr. Bertuglia dissolved Doraldo Restaurant Inc. immediately after the sale without making any provision for new ownership of its trade name and service mark assets. This suggests Mr. Bertuglia believed that he had conveyed all right, title, and interest in the assets.

The arguable ambiguity in the APA prevents Mr. Bertuglia from proving fraudulent intent solely from the face of the contract, and there was no convincing parol evidence regarding the parties' mutual intent when entering into the transaction. The Court therefore **FINDS** that Mr. Bertuglia has not proved by clear and convincing evidence that Maraug knew it was not the owner of the mark at the time of registration.

### III.   Conclusion

For the reasons set forth above, the Court **FINDS** in favor of defendants on Maraug's trademark infringement claim and **DENIES** defendant Bertuglia's petition to cancel Maraug's trademark. This matter is therefore **DISMISSED WITH PREJUDICE.**

While this action is concluded, the question of who actually

---

[7]The Court does not intend this discussion to be a formal, binding finding of ambiguity in the APA. Rather, the Court intends only to show that an arguable ambiguity can lead a party to act in good faith.

13

has the right to use the DORALDO service mark outside of the Williamsburg location remains unresolved.  This issue is better negotiated than litigated.  Messrs. Bertuglia and Alosa are savvy businessmen and accomplished restaurateurs who can reach an understanding while enjoying a fine vintage (whether red, white or rose) in someone's Italian restaurant.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

                                        /s/
                                Walter D. Kelley, Jr.
                            UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 16, 2007

14